TAX COURT OF NEW JERSEY

Hon. Mary Siobhan Brennan, J.T.C.
JUDGE

210 S. Broad Street, 5th Floor
Trenton, New Jersey 08608
(609) 815-2922, Ext. 54560

March 19, 2018

Wilson Law Group, LLC
Margaret C. Wilson, Esquire
34 E. Main Street
Somerville, New Jersey 08876
Via ECourts

Office of the Attorney General
Michael J. Duffy, Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
PO Box 106
Trenton, New Jersey 08625-0106
Via ECourts

> RE:  Infosys Limited of India, Inc. v. Director, Division of Taxation
> Docket # 012060-2016

Dear Counsellors:

This constitutes the court's decision on defendant's motion for reconsideration of the court's November 28, 2017 letter opinion, granting Infosys Limited of India, Inc.'s ("Infosys") motion for partial summary judgment and denying Director, Division of Taxation's ("Director") cross-motion for partial summary judgment.

In that opinion, the court determined Infosys's entire net income for New Jersey Corporation Business Tax ("CBT") purposes is equal to its federal taxable income, as reflected on Infosys's federal tax return. Further, the court ordered the refund of CBT paid on Infosys's foreign source income for the 2008 through 2011 tax years. For the reasons explained more fully below, the court will grant, in part, Director's motion for reconsideration and amplify its prior decision.

*

A motion for rehearing or reconsideration is governed by R. 8:10, which states:

> The provisions of R. 1:7-4, R. 4-49-1 and R. 4-49-2 (Motion for New Trial and Motion to Alter or Amend a Judgment) shall apply to Tax Court matters except that all such motions shall be filed and served not later than 20 days after the conclusions of the court are announced orally or in writing, with respect to R. 1:7-4 and R. 4:49-1, and after the date of the judgment or order, with respect to R. 4:49-2.
>
> [R. 8:10.]

The Director's moving papers request relief pursuant to R. 4:49-2, which provides, in part, that:

> [A] motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than 20 days after service of the judgment or order upon all parties by the party obtaining it.
>
> [R. 4:49-2.]

The court finds the Director's Motion for Reconsideration was timely filed on December 18, 2017, within the 20-day period prescribed under R. 4:49-2.[1] In its motion, the Director requests the court vacate its November 28, 2017 decision, deny Infosys's motion for partial summary judgment, and grant Director's cross-motion for partial summary judgment.

A motion for rehearing or reconsideration is granted sparingly. R. 4:49-2 requires the motion "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred . . . ." R. 4:49-2. Reconsideration "is a matter within the sound discretion of the court, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Thus, a motion for reconsideration will be granted "only for those cases which fall into that narrow corridor in which either: (1) the court has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative,

---

[1] As a procedural matter, the court signed an Order in accordance with its November 28, 2018, however that Order was inadvertently not uploaded onto the ECourts system. It is being uploaded simultaneously with this Letter Opinion.

competent evidence." <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401 (Ch. Div. 1990). Reconsideration is reserved for unique circumstances and is not justified by a litigant's mere dissatisfaction with the court's decision; such arguments are best raised on appeal. <u>Ibid.</u>

The Director raises two arguments in support of its motion for relief. First, the Director asserts that the court did not specifically analyze N.J.S.A. 54:10A-4(k)(2)(A), which it argues requires the add-back of foreign income that is exempted under federal law. That statute provides as follows:

> (k) "Entire net income" shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.
>
> For the purpose of this act, the amount of a taxpayer's entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report, or, if the taxpayer is classified as a partnership for federal tax purposes, would otherwise be required to report, to the United States Treasury Department for the purpose of computing its federal income tax, provided however, that in the determination of such entire net income,
>
> ....
>
> (2) Entire net income shall be determined without the exclusion, deduction or credit of:
>
> (A) The amount of any specific exemption or credit allowed in any law of the United States imposing any tax on or measured by the income of corporations.
>
> [N.J.S.A. 54:10A-4 (k)(2)(A).]

Additionally, the Director maintains that the court erred in reaching the conclusion that the Director did not object to Infosys' calculation of the CBT refund due. Thus, the Director asserts that entry of the court's order directing payment of a refund to Infosys in the amount claimed, plus interest, was in error. In support of this contention, the Director points to page 17, footnote 4 of its summary judgment brief, reciting:

3

> Neither the Tax Convention with the Republic of India ("Treaty") nor the Pre-Filing Agreement have been included in the motion record. Thus, Taxation reserves the right to verify that Plaintiff's returns were prepared in accord with said documents in the context of discovery. Thus, even if Plaintiff's motion is granted, this Court should not order a specific dollar refund at this time.

The court is satisfied that the reasoning set forth in its November 28, 2017 letter opinion adequately addresses why the Director's interpretation of the term "entire net income" under N.J.S.A. 54:10A-4(k) is in error. Nevertheless, to the extent that the court offered insufficient reasoning why the add-back provisions of N.J.S.A. 54:10A-4(k)(2)(A) do not apply, the court hereby revises and amplifies its November 28, 2017 decision. Additionally, the court vacates that portion of its November 28, 2017 decision ordering the Director to make payment of a $5,831,788 refund to Infosys, and affords the Director until Monday, July 30, 2018[2] to calculate the refund due Infosys consistent with this decision.

The court first addresses the Director's motion for reconsideration as it relates to the addback provisions of N.J.S.A. 54:10A-4(k)(2)(A).

Subsequent to the Appellate Division's decision in <u>Toyota Motor Credit Corp. v Director, Div. of Taxation</u>, 28 N.J. Tax 96 (Tax 2014), <u>aff'd,</u> No. A-5189-14T3 (App. Div. October 23, 2017), the Director presented an additional argument. The Director argued that even if Line 29 of the Unconsolidated Federal Form 1120-F establishes the tax base, the Director can still addback exemptions or deductions allowed under the treaty by virtue of N.J.S.A. 54:10A-4(k)(2)(A). That statute allows for the add-back of "specific exemptions or credit allowed in any law of the United States imposing any tax on or measured by the income of corporations."

---

[2] The claims not included in this partial summary judgment are scheduled for trial on Monday July 30, 2018. Any outstanding dispute regarding the amount of refund due plaintiff will be resolved as part of the trial.

4

The Director's position is that N.J.S.A. 54:10A-4(k)(2)(A) is a broadly written add-back provision that can apply to several different types of federally exempted income, including foreign income. It asserts that under the treaty, Infosys's foreign income is exempted from federal taxation by means of I.R.C. sections 11(d), 882(b) and 6114 and therefore fits squarely within the purview of the add-back statute.

Generally, the I.R.C. imposes a tax on a domestic corporation's world-wide taxable income. See I.R.C. §§ 11; 61; and 63. Specifically, I.R.C. § 11(d) provides:

> Foreign corporations. In the case of a foreign corporation, the taxes imposed by subsection (a) and section 55 [I.R.C. § 55] shall apply only as provided by section 882.
>
> [I.R.C. § 11(d).]

In the case of a foreign corporation, the tax imposed is determined by § 882. Generally, a foreign corporation engaged in a trade or business within the United States is subject to tax on its "taxable income which is effectively connected with the trade or business of the United States." I.R.C. § 882 (a)(1). Internal Revenue Service regulations provide:

> All income, gain or loss for the taxable year derived by a … foreign corporation engaged in a trade or business in the United States from sources within the United States which does not consist of income, gain or loss described in section 871 (a)(1) or 881 (a), or of gain or loss from the sale or exchange of capital assets, shall, for purposes of paragraph (a) of this section, be treated as effectively connected for the taxable year with the conduct of a trade or business in the United States.
>
> [26 C.F.R. § 1.864-4(b).]

I.R.C. § 882(b) states:

> Gross income. In the case of a foreign corporation, except where the context clearly indicates otherwise, gross income includes only (1) gross income which is derived from sources within the United States and which is not effectively connected with the conduct of a trade or business within the United States, and (2) gross income which is effectively

5

connected with the conduct of a trade or business within the United States.

[Ibid.]

The Director concludes that because I.R.C. §§11(d) and 882 exclude or exempt certain income from sources outside of the U.S. from a foreign corporation's tax base, these are specific exemptions that must be added back to a taxpayer's federal taxable income for purposes of computing New Jersey entire net income pursuant to N.J.S.A. 54:10A-4(k)(2)(A).

Finally, the Director argues that since I.R.C. § 6114 requires that foreign income excluded from federal taxation based on treaty positions be disclosed, under New Jersey law, such income is to be included in entire net income. I.R.C. § 6114 provides:

> (a) In general. Each taxpayer who, with respect to any tax imposed by this title, takes the position that a treaty of the United States overrules (or otherwise modifies) an internal revenue law of the United States shall disclose (in such manner as the Secretary may prescribe) such position-
>
> (1) On the return of tax for such tax (or any statement attached to such return) . . . .
>
> [Ibid.]

The Director asserts that to the extent that a treaty-based tax return position reduced Infosys's income on Line 29 of its CBT return, that reduction may then be added back for purposes of computing entire net income under N.J.S.A. 54:10A-4(k)(2)(A).

The court finds the Director's arguments unconvincing. N.J.S.A. 54:10A-4(k)(2)(A) allows for the add-back of "specific exemptions or credit allowed in any law of the United States imposing any tax on or measured by the income of corporations." First and foremost, the U.S.-India treaty is not a

6

law of the United States. Treaties are, by definition, agreements between foreign states governed by international law.[3]

The distinction between a treaty and a law of the United States is acknowledged by their separate reference in the Supremacy Clause of the Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
>
> [U.S. Const., art. VI, cl. 2]

In addition, I.R.C. § 6114 itself distinguishes "a treaty of the United States" from "an internal revenue law of the United States."

There is no case law supporting the Director's position. The court is aware of only one case where a similar argument was successfully advanced, and that matter is easily distinguishable from the present case. See Garfield Trust Co. v. Director, Div. of Taxation, 102 N.J. 420 (1986), wherein the New Jersey Supreme Court determined that the inclusion of the face value and interest income of federal obligations arising under the Federal Public Debt Statute, 31 U.S.C.S. §742 was to be included in the CBT tax base pursuant to N.J.S.A. 54:10A-4(k)(2)(A)).

Moreover, neither treaty protection nor the I.R.C. limitations on the scope of taxation of foreign entities qualifies as a "specific exemption or credit" as required by the statute. In fact, N.J.A.C. 18:7-

---

[3] The broad meaning of the word "treaty", as the term is customarily used, is "any international agreement concluded between states in written form and governed by international law, whether embodied in a single instrument or in two or more related instruments and whatever its particular description . . . ." Vienna Convention of the Law of Treaties of May 23, 1969, Art. 2(1)(a), Compiled at 63 Am.J.Int'l L. 875 (1969). See also B. Altman & Co. v. United States, 224 U.S. 583, 600-01, 32 S. Ct. 593, 56 L. Ed. 894 (1912); L. Henkin, Foreign Affairs and the Constitution 142 (1972).

5.2 refers to a specific exemption as being a deduction when computing federal taxable income, not to foreign income that was never included in the federal tax base.[4]

Had the Legislature wished to provide for the add-back of foreign income excluded by treaties of the United States, it could have specifically done so. The Legislature chose to equate CBT entire net income with "the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report … to the United States Treasury Department for the purpose of computing its federal income tax" subject only to *specific* add-back provisions. To interpret N.J.S.A. 54:10A-4(k)(2)(A) as broadly as is argued by the Director would be to undercut the Legislature's clearly stated intent and render it meaningless when determining entire net income of foreign corporations.

With respect to the court's prior decision ordering payment of the refund, that provision is vacated. The court accepts the Division's argument that discovery and analysis has not been completed due to the early filing of the partial summary judgment motions. For this reason the court will not specify the amount of the refund due to Infosys, and will permit the Division sufficient opportunity to conduct discovery and determine its position on this issue. If the parties cannot resolve this issue, the court will include this issue as part of the trial on the disputes not included in the partial summary judgment motions. That trial is scheduled for Monday July 30, 2018.

In conclusion, the court grants Infosys' motion for partial summary judgment and denies the Director's motion for partial summary judgment. Upon reconsideration the court vacates its prior order instructing the Director to issue a CBT refund to Infosys in the amount of $5,831,788, plus interest. The Director shall have until July 30, 2018 to calculate the refund amount due plaintiff in accordance

---

[4] N.J.A.C. 18:7-5.2 states that CBT taxpayers are to add back to their federal taxable income "[t]he amount of any specific exemption or credit allowed in any law of the United States imposing any tax on or measured by the income of corporations, where such specific exemption or credit has been deducted in computing Federal taxable income."

with this decision. If Infosys and the Director are unable to agree on a specific refund amount, they shall advise the court and the matter will be included as part of the July 30, 2018 trial concerning the remaining issues in this case.

Sincerely,

/s/ Mary Siobhan Brennan, J.T.C.